UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| v. | : | 3:10-cr-28 (CFD) |
| | : | |
| LARRY CORBETT | : | |

**MEMORANDUM OF DECISION**

The defendant, Larry Corbett, is charged in a six count Superseding Indictment with the following offenses: kidnapping resulting in death in violation of 18 U.S.C. § 1201(a)(1) (Count One); premeditated murder through the use of a firearm in violation of 18 U.S.C. §§ 924(c), 924(j)(1) (Count Two); felony murder through the use of a firearm in violation of 18 U.S.C. §§ 924(c), 924(j)(1) (Count Three); interference with commerce by robbery in violation of 18 U.S.C. § 1951(a)(1) (Count Four); possession with intent to distribute marijuana in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(D) (Count Five); and using or carrying a firearm during and in relation to a narcotics trafficking offense in violation of 18 U.S.C. § 924(c)(1)(A)(iii) (Count Six). The Superseding Indictment alleged that Corbett kidnapped, robbed, and murdered George McPherson on January 14, 2008.

On March 14, 2011, Corbett waived his right to a jury trial pursuant to Federal Rule of Criminal Procedure 23(a). The Court commenced a bench trial on March 28, 2011. At the close of the evidence, Corbett requested specific findings of fact in accordance with Federal Rule of Criminal Procedure 23(c).[1] The Court's findings of fact and conclusions of law follow.

---

[1] At the conclusion of the Government's case-in-chief, Corbett also moved for a judgment of acquittal on all six counts of the Superseding Indictment pursuant to Federal Rule of Criminal Procedure 29(a). The Court reserved its decision on Corbett's motion pursuant to Federal Rule

**I.** **Findings of Fact**

After consideration of the testimony and exhibits presented at trial, the Government's proposed findings of facts and the defendant's proposed findings of facts, and closing arguments by counsel, the Court finds as follows[2]:

1. At all relevant times, Larry Corbett resided at 383 Harral Avenue in Bridgeport, Connecticut.

2. Prior to January 14, 2008, Corbett had purchased redistribution quantities of marijuana from George McPherson on at least two occasions. Corbett first purchased marijuana from McPherson in November 2007, around Thanksgiving, and again purchased marijuana from McPherson in December 2007. Both purchases were made in McPherson's apartment, which was located at 3180 Tiemann Avenue, Bronx, New York.

3. Corbett arranged another marijuana purchase from McPherson for January 14, 2008. Corbett and McPherson made a number of cellular telephone calls to each other about the marijuana deal.[3] The planned transaction was for the sale of approximately twenty-seven pounds of marijuana from McPherson to Corbett for approximately $1,000 per pound. Corbett planned to travel from Bridgeport, Connecticut, to McPherson's apartment in Bronx, New York, to receive the marijuana.

---

of Criminal Procedure 29(b). As the trier of fact, the Court considers Corbett's Rule 29(a) motion in conjunction with rendering its decision in this case.

[2] The failure to specifically identify a particular piece of evidence or testimony should not be construed as a comment on its probative value. The Court's findings of fact and conclusions of law were reached based on its consideration of the entire record.

[3] The evidence shows that Corbett may have initially contacted McPherson on or about January 8, 2008, to discuss this transaction.

4. McPherson was concerned about being able to locate twenty-seven pounds of marijuana for the January 14 transaction with Corbett because it was an amount of marijuana significantly larger than McPherson typically sold.

5. Shortly before January 14, 2008, Corbett told Rayshan Smith, his friend and co-worker, that he was planning to rob a Jamaican drug dealer in the Bronx. Corbett further indicated to Smith that he had previously purchased marijuana from the dealer, that he had been inside the dealer's house on multiple occasions, that he had good dealings with the dealer and was comfortable with him, and that he was going to "flash some money" at the dealer and rob him. Corbett also tried to solicit Smith to accompany him to New York to commit the robbery—Corbett promised to give Smith some of the money resulting from the robbery if Smith agreed to join him. Corbett called Smith several times on the evening of January 13, 2008, and the morning of January 14, 2008, before the planned robbery in the Bronx; however, Smith did not answer and did not go to New York with Corbett.

6. Corbett traveled from Bridgeport, Connecticut, to the Bronx on the morning of January 14, 2008, in a green Dodge Grand Caravan that was registered to Corbett's wife. Corbett planned to kidnap McPherson and rob him of the marijuana.

7. Corbett arrived at McPherson's Tiemann Avenue apartment in the Bronx around 9:00 a.m. on January 14. McPherson met Corbett at the door of his apartment and informed Corbett that he did not yet have all of the marijuana for the planned transaction. Corbett left

McPherson's apartment and went to get breakfast nearby. McPherson also left his apartment, but shortly returned with a large blue bag that contained a substantial amount of marijuna.[4]

8.   Around 10:30 a.m., Corbett called McPherson and requested that McPherson come outside to Tiemann Avenue to conduct the sale of the marijuana. McPherson, a long-time marijuana dealer, customarily conducted his sales from within his apartment. Corbett used this approach as a ruse to get McPherson to leave his apartment and to come to the van; Corbett told McPherson that he suspected that he was going to be robbed of his cash by people in a suspicious car nearby on Tiemann Avenue. McPherson acquiesced and exited his apartment. Corbett's van was parked in front of McPherson's building along the curb on the near side of the road, with its front-end facing oncoming traffic and away from the dead end of Tiemann Avenue, in order to make a quick getaway.[5]

9.   McPherson entered Corbett's van with the bag of marijuana. Once inside Corbett's van, McPherson was held against his will and driven away in the van from Tiemann Avenue by Corbett and another unidentified person who was in the van with Corbett (hereinafter identified as "X"). X had joined with Corbett in the plan to kidnap and rob McPherson. No one on or near Tiemann Avenue indicated that they heard any gunshots or other loud disturbances at or around the time McPherson entered the van, and no evidence of gunshots on Tiemann Avenue was discovered.

---

[4] The exact amount of marijuana that McPherson had on the morning of January 14, 2008, is unknown and was the subject of conflicting testimony. Based on the evidence, however, the Court finds that McPherson had a substantial amount of marijuana in the bag.

[5] The van was parked on the east side of Tiemann Avenue, with its front end facing Hammersely Avenue.

10. Corbett and X continued to hold McPherson against his will, transported him in Corbett's van from Tiemann Avenue to an unknown location, and robbed him of the marijuana that he had carried into the van. McPherson was then shot and killed by either Corbett or X with two shots from a .40 caliber semi-automatic handgun. At approximately 11:16 a.m., Corbett backed his van onto Sterling Road in Greenwich, Connecticut, pulled McPherson's body from the van and left it on the road, and immediately drove away. After McPherson was shot and killed, Corbett removed and disposed of McPherson's wallet, cellular telephones, and jacket. It is not clear whether McPherson was killed while in New York or Connecticut; however, McPherson was not killed immediately upon entering Corbett's van on Tiemann Avenue.

11. At approximately 11:20 a.m. on January 14, 2008, McPherson's body was discovered on Sterling Road by a nearby homeowner. The homeowner called 911 and waited inside her car until the police arrived approximately three minutes later.

12. Greenwich Police Officer Paul Zazerro was the first to respond to the 911 call regarding McPherson's body. Upon arriving at the scene, Officer Zazerro observed McPherson's body lying face down on Sterling Road. McPherson's white long-sleeve shirt was blood stained and was pulled over his head, and his blue jeans were pulled down about half-way on his buttocks. Officer Zazerro further observed two gunshot wounds in the upper right of McPherson's back. Officer Zazerro checked McPherson's vital signs and concluded that he was dead. Following an investigation by Detective Steven Hickey of the Greenwich Police Department, McPherson's body was transported to the Connecticut Medical Examiner's Office.[6]

---

[6] During his investigation, Detective Hickey found a missing button from McPherson's jeans and a piece of plastic that had broken away from the inside of Corbett's van.

13. Dr. Ira Kanfer of the Office of the Chief Medical Examiner performed an autopsy of McPherson's body at 9:30 a.m. on January 15, 2008. Dr. Kanfer described McPherson as a "well-developed, well-nourished black male appearing the stated age of 49 years." Based on his examination, Dr. Kanfer determined that the cause of McPherson's death was two gunshot wounds to McPherson's upper right back that traveled from McPherson's back to front and from his right to his left—one bullet pierced McPherson's cervical vertebral column and the other impacted McPherson's aorta and left lung. Dr. Kanfer also identified a one inch jagged laceration on McPherson's left hand, which was "relatively superficial in nature," and Dr. Kanfer did not observe any gunshot powder or residue on McPherson's hand. Dr. Kanfer concluded that the manner of death was a homicide and that McPherson died "fairly quickly" after being shot.

14. On the evening of January 16, 2008, Corbett drove the green Dodge Grand Caravan to Washington, D.C., for the purpose of disposing of the van as it contained a number of blood stains from McPherson's body. Corbett arrived at the residence of his ex-girlfriend and mother of his daughter, Delores Flood, in Washington, D.C., at approximately 3:00 a.m. on January 17, 2008. Later that morning, Corbett asked Flood whether she could help him sell the green Dodge Grand Caravan, but Flood declined.

15. In the afternoon of January 17, 2008, Corbett's green Dodge Grand Caravan was stolen in Washington, D.C. Corbett reported the van stolen to the Metropolitan Police Department in Washington, D.C., and the van was later recovered by the Metropolitan Police, towed, and ultimately seized by the Greenwich (Connecticut) Police Department on January 23, 2008, pursuant to a Washington, D.C., search warrant. The green Dodge Grand Caravan was

transported back to Connecticut and a Connecticut search warrant for the van was executed on January 23.

16. Forensic examination of the interior of the green Dodge Grand Caravan revealed extensive blood stains consistent with McPherson's blood in a number of areas in the van.

17. On January 29, 2008, Corbett was arrested in Stamford, Connecticut, by detectives in the Greenwich Police Department. After signing a Notice of Rights form on two occasions and knowingly and voluntarily waiving his constitutional rights, Corbett admitted to driving to McPherson's apartment on the morning of January 14, 2008, for the purpose of completing a marijuana transaction. Corbett also admitted that he drove from Bronx, New York, to Greenwich, Connecticut, and dumped McPherson's body on Sterling Road in Greenwich;[7] however, Corbett denied killing McPherson.

18. During April or May 2008, while in the custody of the State of Connecticut Department of Correction for conspiracy to commit the murder of McPherson,[8] Corbett was placed in a holding cell of the Connecticut Superior Court in Stamford, Connecticut, with fellow inmate Craig Frasca, who was being held on an unrelated crime. While in that holding cell,

---

[7] Corbett's oral and written statements to the Greenwich police included other information, including several versions of an alleged shootout on Tiemann Avenue involving a third party; however, the Court does not find Corbett's statements concerning the claimed shootout credible.

[8] Corbett was initially charged in a Connecticut Superior Court warrant with conspiracy to commit murder in violation of Sections 53a-48 and 53a-54a of the Connecticut General Statutes, which resulted in his arrest on January 29, 2008, by the Greenwich police. After Corbett filed a motion to dismiss in the state court on jurisdictional grounds, the U.S. Attorney's Office for the District of Connecticut took over the prosecution. Corbett was indicted in the District of Connecticut on January 21, 2010, in this case, and the Superseding Indictment was returned on February 2, 2010.

Corbett and Frasca discussed with each other the crimes that led to their incarceration and Corbett admitted to Frasca that he was involved in a drug deal in New York, that he and another person shot and killed the dealer over the drugs, and that Corbett dumped the body in Greenwich, Connecticut.

19. Prior to January 14, 2008, Basir Hargrave, Corbett's stepson, observed a semi-automatic handgun in Corbett's Harral Avenue apartment—Basir saw the handgun in Corbett's dresser. Then, during the morning of January 29, 2008, the day Corbett was arrested, Basir observed the same semi-automatic gun along with a small amount of marijuana in a black bag that Corbett had placed on a table in his Harral Avenue apartment.

20. In preparation of and during the commission of the kidnapping, robbery, and murder of McPherson, Corbett used several cellular telephones, which are instruments of interstate commerce. Additionally, the marijuana that Corbett robbed McPherson of was a commodity moving in interstate commerce.

21. During the commission of the kidnapping, robbery, and murder of McPherson, Corbett carried, either on his person on in his van, a firearm.

## II.     Conclusions of Law[9]

The Government bears the burden to prove each element of a crime beyond a reasonable doubt. See Holland v. United States, 348 U.S. 121, 138 (1954).

---

[9] The Court's conclusions of law are based on the Court's findings of fact set forth above, each of which the Court finds has been proved beyond a reasonable doubt. Also, as previously stated, in making both its findings of fact and conclusions of law, the Court considered all of the evidence presented at trial, even though the findings do not necessarily include references to all of the evidence they are based on.

### A. Count One: Kidnapping Resulting in Death

In Count One of the Superseding Indictment, Corbett is charged with kidnapping resulting in the death of George McPherson in violation of 18 U.S.C. § 1201(a)(1). To satisfy its burden and prove this charge against Corbett, the Government must establish each of the following elements beyond a reasonable doubt: (1) that Corbett unlawfully, knowingly, and willfully seized, confined, inveigled, decoyed, kidnapped, abducted, or carried away McPherson; (2) that McPherson was transported in interstate commerce while so seized, confined, inveigled, decoyed, kidnapped, or abducted, or Corbett traveled in interstate commerce or used an instrumentality of interstate commerce in committing or in furtherance of the seizing, confining, inveigling, decoying, kidnapping, or abducting; (3) that Corbett held McPherson for ransom, reward, or for any other reason; and (4) that Corbett's acts resulted in the death of McPherson. See 18 U.S.C. § 1201(a)(1); Chatwin v. United States, 326 U.S. 455, 459 (1946); United States v. Macklin, 671 F.2d 60, 66 (2d Cir. 1982).

Corbett traveled from Bridgeport, Connecticut, to Bronx, New York, on January 14, 2008, intending to rob and kidnap McPherson. Corbett lured McPherson outside of his Tiemann Avenue apartment, where McPherson customarily completed his marijuana sales, and into his green Dodge Grand Caravan by telling McPherson that he was suspicious of a nearby car on Tiemann Avenue. Once McPherson was in the van, Corbett and X unlawfully, knowingly, and willingly seized and confined McPherson against his will for the purpose of robbing McPherson of the marijuana that Corbett had falsely represented to McPherson he wished to purchase. See United States v. Baker, 419 F.2d 83, 89 (2d Cir. 1969) (holding that the "for ransom or reward or otherwise" element contained in 18 U.S.C. § 1201(a) is satisfied where the defendant's "ultimate

purpose sought to be furthered by [the] kidnap[p]ing is theft"). While confining McPherson against his will, the evidence shows that Corbett and X transported him from New York to Connecticut.[10] In addition to transporting McPherson in interstate commerce (from New York to Connecticut), Corbett also traveled in interstate commerce from Connecticut to New York to effectuate the planned robbery and kidnapping, and Corbett used a cellular telephone, which is an instrumentality of interstate commerce, to arrange and carry out the offense. Corbett acted unlawfully, knowingly, and willingly in luring McPherson out of his apartment, confining him against his will, and transporting him to Connecticut. Finally, during and in relation to kidnapping McPherson, Corbett, either as a principal or as an aider and abettor, unlawfully, knowingly, and intentionally shot and killed McPherson.[11]

---

[10] The Court finds that the evidence shows, beyond a reasonable doubt, that McPherson was not killed outside of his apartment in Bronx, New York, immediately upon entering Corbett's van; rather, McPherson was alive when Corbett and X began transporting him away, against his will, from his Tiemann Avenue apartment. See United States v. Singh, 483 F.3d 489, 493–94 (7th Cir. 2007) (stating that in order to establish the interstate commerce element of the federal kidnapping statute, 18 U.S.C. § 1201, the government only needs to prove beyond a reasonable doubt that the victim was alive when the transportation began, not when the victim was actually transported across a state line).

[11] At the start of trial, the Government informed the Court and Corbett that, despite not alleging aiding and abetting in the Superseding Indictment, it intended to pursue an aiding and abetting charge pursuant to 18 U.S.C. § 2 for each of the six charged offenses. Courts have repeatedly found that "the inclusion of an aiding and abetting charge . . . will rarely, if ever, constructively amend an indictment because an aiding and abetting charge is arguably implicit in every indictment." United States v. Mucciante, 21 F.3d 1228, 1233 (2d Cir. 1994). "Aiding and abetting is not a separate offense . . .; [rather,] [a]iding and abetting is an alternative charge in every . . . count." United States v. Sanchez, 917 F.2d 607, 611 (1st Cir. 1990). Although courts prefer the indictment to reference the aiding and abetting statute, see United States v. Taylor, 464 F.2d 240, 241 n.1 (2d Cir. 1972), courts have consistently held that the inclusion of an aiding and abetting charge does not constructively amend an indictment even where the indictment makes no reference to 18 U.S.C. § 2. See, e.g., United States v. Lewis, 594 F.3d 1270, 1286 (10th Cir. 2010); Sanchez, 917 F.2d at 611; Taylor, 464 F.2d at 241 n.1; Walsh v. United States, Nos. 99 CR. 586, 02 CV. 5673, 2006 WL 3457635, at *4 (S.D.N.Y. Nov. 29, 2006). Here, the Court

B.   Count Two: Premeditated Murder

In Count Two of the Superseding Indictment, Corbett is charged with premeditated murder in violation of 18 U.S.C. §§ 924(c), 924(j)(1).  To satisfy its burden and prove this charge against Corbett, the Government must establish each of the following elements beyond a reasonable doubt: (1) that Corbett committed a crime of violence or drug trafficking offense as charged in Counts One, Four, and Five; (2) that during and in relation to the commission of the predicate crime of violence or drug trafficking offense, Corbett unlawfully caused the death of McPherson through the use of a firearm; (3) that Corbett acted with malice aforethought; and (4) that Corbett acted with premeditation.  See 18 U.S.C. §§ 924(c), 924(j)(1), 1111; United States v. Dale, 614 F.3d 942, 962 (8th Cir. 2010).

The Government has proved the first three elements of premeditated murder beyond a reasonable doubt.  Corbett committed both a crime of violence—kidnapping resulting in the

---

finds that it is appropriate to consider aiding and abetting as to Corbett.  See 2 Leonard B. Sand, et al., Modern Federal Jury Instructions ¶ 11.01, Instruction 11-2 (2010); United States v. Hamilton, 334 F.3d 170, 180 (2d Cir. 2003) ("Under 18 U.S.C. § 2, a defendant may be convicted of aiding and abetting a given crime where the government proves that the underlying crime was committed by a person other than the defendant, that the defendant knew of the crime, and that the defendant acted with the intent to contribute to the success of the underlying crime.").  Additionally, there is no unfair surprise to Corbett in considering the Government's aiding and abetting theory as Corbett was sufficiently aware of the "core criminality to be proven at trial" and was provided notice on the first day of trial, prior to the Government beginning its case.  See United States v. Berger, 224 F.3d 107, 117 (2d Cir. 2000) (stating that the Second Circuit has "consistently permitted significant flexibility in proof, provided that the defendant was given notice of the core of criminality to be proven at trial"); United States v. Smith, 727 F.2d 214, 218 n.5 (2d Cir. 1984) (holding that there was no unfair surprise when the government gave notice that it would seek an aiding an abetting charge on the day that the defense began its case).

death of McPherson (Count One)[12] and interference with commerce through the use of violence (as set forth below in Count Four)[13]—and a drug trafficking offense (as set forth below in Count Five). Additionally, the evidence shows that during and in relation to kidnapping McPherson, interfering with commerce through the use of violence, and possessing marijuana with intent to distribute it, Corbett, either as a principal or as an aider and abettor, unlawfully caused the death of McPherson through the use of a firearm. In so killing McPherson, the Court finds that Corbett, either as a principal or as an aider and abettor, acted consciously, with the intent to kill McPherson, which satisfies the malice aforethought element. See United States v. Velazquez, 246 F.3d 204, 214–15 (2d Cir. 2001).

Although the Government has proved malice aforethought beyond a reasonable doubt, the Government must also prove, beyond a reasonable doubt, that Corbett premeditated the killing of McPherson. While the Government has produced some evidence of premeditation, the Government has not met its burden in proving premeditation beyond a reasonable doubt.[14]

---

[12] The U.S. Court of Appeals for the Second Circuit has held that kidnapping is a crime of violence. See United States v. Patino, 962 F.2d 263, 267 (2d Cir. 1992) ("That the crime of kidnapping involves the threatened use of physical force against a person and is thus a crime of violence under [18 U.S.C. § 924(c)] cannot be questioned.").

[13] Courts have held that Hobbs Act robbery is a crime of violence. See, e.g., Carter v. United States, 731 F. Supp. 2d 262, 266 (D. Conn. 2010) (stating that "Hobbs Act Robbery is a crime of violence"); see also United States v. Elder, 88 F.3d 127, 129 (2d Cir. 1996) (noting that conspiracy to commit a Hobbs Act robbery is a crime of violence itself because the underlying crime, a Hobbs Act robbery, is a crime of violence).

[14] This finding has no effect on the other counts charged in the Superseding Indictment. Even though the Court finds that the Government has not established the element of premeditation, the Government has proved beyond a reasonable doubt that Corbett or X intentionally killed McPherson.

> An act is done with premeditation if it is done upon planning or deliberation. In order to satisfy this element the government must prove that the defendant killed [the victim] only after thinking the matter over, deliberating whether to act before committing the crime. . . . The amount of time needed for premeditation of a killing depends on the person and the circumstances. [Premeditation is satisfied if] the defendant had a period of time to become fully aware of what he intended to do and to think it over before he acted.

2 Leonard B. Sand, et al., Modern Federal Jury Instructions ¶ 41.01, Instruction 41-5 (2010); see also United States v. Mulder, 273 F.3d 91, 117 (2d Cir. 2001) (stating that premeditation requires that the defendant, with a "cool mind did, in fact, reflect at least for a short period of time before his act of killing" (citing United States v. Shaw, 701 F.2d 367, 393 (5th Cir. 1983)). Premeditation may be proved by circumstantial evidence including, but not limited to, "the defendant's prior relationship to the victim, the defendant's carrying of the murder weapon to the scene, and the manner of the killing." See United States v. Begay, --- F.3d ---, No. 07-10487, 2011 WL 94566, at *3 (9th Cir. Jan. 12, 2011) (quoting United States v. Free, 841 F.2d 321, 325 (9th Cir. 1988)). As previously stated, the evidence shows that Corbett planned and intended the kidnapping and robbery of McPherson before he left Connecticut for the Bronx on January 14; however, while there is evidence suggesting that Corbett premeditated the killing of McPherson, the Court concludes that the Government has not met its burden in proving premeditation beyond a reasonable doubt.

### C. Count Three: Felony Murder

In Count Three of the Superseding Indictment, Corbett is charged with felony murder in violation of 18 U.S.C. §§ 924(c), 924(j)(1). To satisfy its burden and prove this charge against Corbett, the Government must establish each of the following elements beyond a reasonable doubt: (1) that Corbett committed a crime of violence or drug trafficking offense as charged in

Counts One, Four, and Five; (2) that during and in relation to the commission of the predicate crime of violence or drug trafficking offense, Corbett unlawfully caused the death of McPherson through the use of a firearm; and (3) that McPherson's death occurred as a consequence of and while Corbett was knowingly and willfully committing the crimes of kidnapping and robbery of McPherson. See 18 U.S.C. §§ 924(c), 924(j)(1), 1111; United States v. Thomas, 34 F.3d 44, 48–49 (2d Cir. 1994).

As discussed below in Count Four, the evidence shows that Corbett and X committed a crime of violence on January 14, 2008—interference with commerce through the use of violence (robbery).[15] During and in relation to the robbery, McPherson was shot and killed by either Corbett or X through the use of a firearm. Under the felony murder doctrine, Corbett's role in McPherson's death (i.e., whether Corbett or X actually shot McPherson) is immaterial; the evidence shows that the killing of McPherson occurred during and as a consequence of Corbett's knowing and willful robbery of McPherson. See United States v. Shea, 211 F.3d 658, 674 (1st Cir. 2000) ("[U]nder the felony murder rule adopted by section 1111's second sentence, the killing of the guards in the Hudson robbery was first-degree murder by those who perpetrated the robbery, regardless of who pulled the trigger or any individual intent."). In contrast to premeditated murder, which requires independent proof of both malice aforethought and premeditation, the intent to commit the underlying felony satisfies the malice requirement for felony murder. See Thomas, 34 F.3d at 48; Walker v. United States, 389 A.3d 801, 807 (D.C. Cir. 1978) ("No distinction [is] made between principals and aiders and abettors for purposes of

---

[15] As previously noted in n.13 above, courts have held that Hobbs Act robbery constitutes a crime of violence.

felony murder liability. Only intent to commit the underlying felony need be proved."). Thus, Corbett's intent to commit the underlying felony of robbery, which the Government has proved beyond a reasonable doubt, satisfies the malice element contained in the first degree murder statute, 18 U.S.C. § 1111, and his intent to kill McPherson need not be proved.

      D.      Count Four: Interference with Commerce Through Use of Violence (Hobbs Act)

In Count Four of the Superseding Indictment, Corbett is charged with interference with commerce through use of violence in violation of 18 U.S.C. § 1951(a)(1), which is commonly referred to as the Hobbs Act. To satisfy its burden and prove this charge against Corbett, the Government must establish each of the following elements beyond a reasonable doubt: (1) that Corbett knowingly obtained or took McPherson's personal property; (2) that Corbett took the property against McPherson's will by using actual or threatened force, violence, or fear of injury; and (3) that Corbett's actions unlawfully obstructed, delayed, or affected interstate commerce. See 18 U.S.C. § 1951(a)(1); United States v. Parkes, 497 F.3d 220, 225–31 (2d Cir. 2007); United States v. Clemente, No. S3 03 CR. 150, 2004 WL 97689, at *2 (S.D.N.Y. Jan. 20, 2004).

The evidence shows that Corbett knowingly robbed McPherson of the marijuana that McPherson possessed upon entering Corbett's van. Corbett had planned to rob McPherson prior to traveling to the Bronx on January 14, 2008, and effectuated that plan on January 14 after luring McPherson into his van. Through the threat or use of a firearm, Corbett, either as a principal or as an aider and abettor, held McPherson against his will inside the van for the purpose of robbing him. Finally, Corbett's robbery of McPherson affected interstate commerce as the evidence shows that the marijuana Corbett robbed McPherson of was a commodity moving in interstate commerce. See Parkes, 497 F.3d at 230 (stating that the jurisdictional

requirement of the Hobbs Act only requires a "*de minimis*" or "very slight" effect on interstate commerce).

   E.   Count Five: Possession with Intent to Distribute Marijuana

In Count Five of the Superseding Indictment, Corbett is charged with possession with intent to distribute marijuana in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(D).  To satisfy its burden and prove this charge against Corbett, the Government must establish each of the following elements beyond a reasonable doubt: (1) that Corbett possessed marijuana; (2) that Corbett knew that he possessed marijuana; and (3) that Corbett possessed marijuana with the intent to distribute it.  See 21 U.S.C. § 841(a)(1); United States v. Gore, 154 F.3d 34, 45 (2d Cir. 1998).

Corbett knowingly arranged to obtain approximately twenty-seven pounds of marijuana from McPherson.  The evidence shows that Corbett and McPherson had engaged in previous marijuana transactions and Corbett planned the January 14 marijuana transaction in advance.  The evidence also shows that Corbett ultimately possessed marijuana on January 14.  When McPherson entered Corbett's van on Tiemann Avenue on January 14, 2008, McPherson was carrying a bag containing a substantial amount of marijuana.[16]  Corbett subsequently robbed McPherson of and took possession of the marijuana in that bag—Corbett knew and was aware that the bag contained marijuana.  Given the substantial quantity of marijuana that Corbett had requested to purchase from McPherson on January 14 and Corbett's two previous five pound purchases of marijuana from McPherson, the Court finds that Corbett intended to distribute the

---

[16] As previously stated, although the exact amount of marijuana that McPherson brought to the van is unknown, the Court finds beyond a reasonable doubt that the bag McPherson carried into Corbett's van contained a redistribution quantity of marijuana.

marijuana that he took possession of. See United States v. Hernandez, 218 F.3d 58, 65 (1st Cir. 2000) ("[I]ntent to distribute can be inferred from the quantity of drugs involved."); see also United States v. Martin, 544 F.3d 456, 458–59 (2d Cir. 2008) (stating that "'possession with intent to distribute' denotes a particular category of possession . . . characterized by the possession of a sufficient quantity of narcotics to raise an inference that the defendant intends to distribute them").

  F. Count Six: Using or Carrying a Firearm During and in Relation to a Narcotics Trafficking Offense

In Count Six of the Superseding Indictment, Corbett is charged with using or carrying a firearm during and in relation to a narcotics trafficking offense in violation of 18 U.S.C. § 924(c)(1)(A). To satisfy its burden and prove this charge against Corbett, the Government must establish each of the following elements beyond a reasonable doubt: (1) that Corbett committed a drug trafficking offense as charged in Count Five; and (2) that Corbett knowingly used or carried a firearm during and in relation to the commission of the predicate drug trafficking offense.[17] See 18 U.S.C. § 924(c)(1)(A); Harris v. United States, 536 U.S. 545, 550 (2002).

---

[17] 18 U.S.C. § 924(c)(1)(A) is broader and encompasses more criminal conduct than that which the Government charged in Count Six of the Superseding Indictment. Specifically, 18 U.S.C. § 924(c)(1)(A), includes predicate crimes of violence in addition to drug trafficking offenses, and criminalizes possession of a firearm in furtherance of the underlying offense; however, the Government only charged Corbett in the Superseding Indictment with the underlying offense of "possession with intent to distribute" and did not include the "furtherance" language contained in the statute itself. Accordingly, in rendering its decision as to Count Six, the Court has only considered the predicate offense of "possession with intent to distribute," as charged in Count Six of the Superseding Indictment, and the "carrying" component contained in 18 U.S.C. § 924(c)(1)(A).

As discussed above in Count Five, Corbett committed a drug trafficking offense on January 14, 2008—Corbett possessed marijuana with intent to distribute it, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(D). The evidence also shows that during and in relation to the committing the drug trafficking offense, Corbett knowingly and intentionally carried a firearm either on his person or in the van. See Muscarello v. United States, 524 U.S. 125, 137–39 (1998) (defining the term "carry" in 18 U.S.C. § 924(c)(1)(A) to include "the carrying of a firearm in a vehicle," even if the firearm is locked in the vehicle's glove compartment or trunk); United States v. Cox, 324 F.3d 77, 82 (2d Cir. 2003) ("In this Circuit, the 'carry' prong [of 18 U.S.C. § 1924(c)(1)] is satisfied if the evidence establishes that, during and in relation to the underlying crime, the defendant either (1) had physical possession of the firearm, or (2) moved the firearm from one place to another. [A] firearm can be carried without being used, e.g., when an offender keeps a gun hidden in his clothing throughout a drug transaction." (internal quotations and citations omitted)).

### III. Conclusion

Accordingly, as to Count One, for kidnapping resulting in death, in violation of 18 U.S.C. § 1201(a)(1), defendant is found GUILTY; as to Count Two, for premeditated murder, in violation of 18 U.S.C. §§ 924(c), 924(j)(1), defendant is found NOT GUILTY; as to Count Three, for felony murder, in violation of 18 U.S.C. §§ 924(c), 924(j)(1), defendant is found GUILTY; as to Count Four, for interference with commerce through use of violence, in violation of 18 U.S.C. § 1951(a)(1), defendant is found GUILTY; as to Count Five, for possession with intent to distribute marijuana, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(D), defendant is found GUILTY; and as to Count Six, for using or carrying a firearm during and in relation to a narcotics trafficking offense, in violation of 18 U.S.C. § 924(c)(1)(A)(iii), defendant is found GUILTY. Corbett's motion for judgment of acquittal [Dkt. #130] is DENIED.

SO ORDERED this 31st day of May 2011, at Hartford, Connecticut.

/s/ Christopher F. Droney
**CHRISTOPHER F. DRONEY**
**UNITED STATES DISTRICT JUDGE**